IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| V. | : | **CRIMINAL NUMBER 21-287-1** |
| | : | |
| **ANTHONY CIPRIANO** | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Anthony Cipriano ("Mr. Cipriano") by his counsel undersigned, Rossman D. Thompson, Jr., Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, submits this memorandum in mitigation of sentence for defendant in the above-captioned case. The defense respectfully moves the Court to accept Mr. Cipriano's plea which was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) which provides for a jointly recommended sentencing range of 76 months to 86 months; a fine, if any, to be determined by the Court; and a $1,200 special assessment.

**I.    INTRODUCTION**

As noted in the government's sentencing memorandum and the Presentence report (PSR), on or about May 18, 2021, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began investigating six gun purchases made by an individual named W.M. due to their investigation which revealed that he was engaged in the trafficking of firearms. On May 26, 2021, the ATF agents interviewed W.M., who said he had not made any such purchases, did not own any guns, and that his wallet was stolen from his car on April 16, 2021. About 30 minutes after the interview, the agents went to a gun store in Philadelphia called Lock's Philadelphia Gun Exchange, where they interviewed an employee at the store who advised that W.M. had made a firearm purchase that day. Agents knew it could not have been the real W.M.

who made the purchase because they were interviewing W.M. while the transaction and background investigation were taking place. When presented with a picture of W.M., the employee confirmed that the individual in the picture was not the man who made the purchase, then described the purchaser as having dreadlocks and a tattoo under his eye—a description that fits Mr. Cipriano. After further investigation, the ATF agents confirmed that Mr. Cipriano had been using W.M.'s driver's license to make 11 firearm purchases from three different gun shops between April 23, 2021, and May 26, 2021.

On May 27, 2021, ATF agents received a notification that W.M. was attempting to buy a firearm from a shop in the city. Based on this fact, the agents directed the salesperson to deny the sale. The next day, an employee from Lock's called the agents to report that Mr. Cipriano was in the store with an associate attempting to buy three firearms. The employee also contacted Philadelphia Police, who asked the clerk to stall the two men until their arrival. Mr. Cipriano attempted to leave the store when he noticed Philadelphia Police Officers entering the store. Following a brief struggle with the officers, Mr. Cipriano was subsequently arrested and charged with numerous firearm offenses in Philadelphia County. He then had initial hearings and was denied bail.

On July 28, 2021, a grand jury sitting in the Eastern District of Pennsylvania returned a twenty-two-count count Indictment charging defendant with making false statements to a federal firearms licensee in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) [Counts One through Eleven], and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (a)(3) [Counts Twelve through Twenty-Two]. On July 20, 2022, Mr. Cipriano appeared before the Honorable Berle M. Schiller and pled guilty to Counts One through Twelve of the Indictment pursuant to a

written plea agreement. The Court then ordered a Presentencing Report and scheduled the matter for sentencing.

## II.     MR. CIPRIANO'S PERSONAL HISTORY

Mr. Cipriano is a 21-year-old male who was born and raised in Philadelphia, Pennsylvania.  He spent his early childhood living with his mother, Jennifer Cipriano, her boyfriend, and his two maternal half-siblings.  His father, Dwayne Burton, was mostly absent in his life.  According to juvenile records, after living together for a brief time, Mr. Cipriano ran away from his father's home, and upon his return, his father refused to take him back into his home. Being a child at the time, this left Mr. Cipriano with no options other than foster care. Following these events, the Department of Human Services (DHS) placed Mr. Cipriano in foster care as a dependent.  As noted in the PSR, Mr. Cipriano was placed in several homes such that he can't recall the number of placements.  In most instances he spent less than two months in each home, he was effectively lost in the system and there were numerous instances where his mother did know his whereabouts.  She visited him on a few occasions under court-ordered visitation, but it was clear early on that his parents were not going to take an active role in raising their son.  Additionally, while in foster care Mr. Cipriano was not encouraged to attend school, as his foster parents were more concerned about receiving a check from the state than his overall welfare.  The PSR references Mr. Cipriano educational history as spotty, but this fact alone makes clear that defendant will do a lot of remedial work in order to obtain his GED.

To no surprise, Mr. Cipriano struggled with behavioral issues that are clearly attributable to factors of poverty limited education and struggles with mental illness.  As noted in the PSR, Mr. Cipriano suffers from post-traumatic stress disorder, schizophrenia, and attention deficit hyperactivity disorder since his early teenage years. In fact, due to the behaviors that are

associated with these issues one can easily understand why when he was 13 or 14-years-old, the police committed him involuntarily to Friends Hospital in Philadelphia for treatment. He was between 14 and 16-years-old when he was shot in the leg, which naturally caused serious mental and physical damage on top of his prior traumas. The bloody street violence that Mr. Cipriano witnessed and experienced throughout his youth haunts him to this day—so much in fact, that he does not sleep well which is only magnified by the noise and stress associated with life at the Federal Detention Center.

      Mr. Cipriano deeply regrets the poor decisions he made which has resulted in his incarceration and understands that it is his conduct in this case that has resulted in his losing his liberty. Through his struggles he is self-aware and understands that he wants to change his life. He longs to connect with his family, address his mental health concerns, and be a full participant in drug treatment and counseling. Mr. Cipriano has had over two years to reflect upon his conduct in this case. He now is taking a closer look at where he is now, what got him to this point, and what it will take to turn his life around going forward. He wants to use his time in prison to focus on rehabilitation so that when he is released from prison, he can obtain employment and be a productive member of the community. In that vein, he intends to participate in a drug treatment program, and focus on understanding why he uses drugs to self-medicate. In addition, he is anxious to enroll in a vocational program where he can learn a trade that will allow him to compete for a job when he is released from prison. Mr. Cipriano understands that it will not be easy to achieve these goals because he is a convicted felon. He has recently connected with his mother, and they are planning on living together when he is released from prison. This is a case where a 21-year-old male is faced with the prospect of spending a significant period in federal prison. However, he is a young man who is motivated to

turn his life around. He has had time to reflect on his conduct in this case and is remorseful for the harm he has caused the community. He now understands that he was a part of the problem concerning gun violence as the guns that he trafficked will be used by felons to commit crimes.

### III. SENTENCING GUIDELINES

The probation officer has filed a PSR, where she calculates the base offense level at 12 pursuant to USSG § 2K2.1(a)(7). As the offense involved between 8 and 24 firearms the offense level is increased by four levels. USSG § 2K2.1(b)(1)(B). Insofar, as defendant possessed a firearm in connection with another felony offense the offense level is increased by four levels pursuant to USSG § 2K2.1(b)(6)(B), thus producing an adjusted offense level of 20. Mr. Cipriano has clearly accepted responsibility for his conduct in this case he is entitled to a three-level reduction pursuant to USSG § 3E1.1(b). The total offense level is now 17. Mr. Cipriano has a criminal history category score of I which yields a guideline range of imprisonment of 24 to 30 months. Due to the consecutive mandatory minimum term of 24 months on Count 12, the guideline range for imprisonment is 48 to 54 months. The parties, however, have entered into an agreement where the recommended sentencing range is between 76 and 86 months. The defense has not filed any objections to the report but is aware that the government is challenging the probation officers' guidelines calculations.

### IV. SENTENCING CONSIDERATIONS

A thorough consideration of the factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence in this case is a sentence of 76 months. The parties have agreed to the aforementioned range however, this stipulation is not binding on this Court. The PSR suggests 48-54 months, and the defense offers no objection to this range. The defense does not have any objections, corrections, or deletions to the report and Mr. Cipriano has authorized counsel to

represent in his papers that he is prepared to be sentenced consistent with the final report. Again, Mr. Cipriano is remorseful for his conduct in this case. He is motivated to turn his life around and to return to the community as a productive member. In that vein, Mr. Cipriano respectfully prays that this Court will accept his plea, as he is a young man with a lot of potential who can be rehabilitated. Mr. Cipriano's time in the Federal Detention Center has been an eye-opening experience. As noted in the PSR, Mr. Cipriano needs drug treatment and vocational training. As the Court is required to consider the sentencing guidelines and policy statements; a 76-month sentence would not create an unwarranted sentence disparity as the sentence would be in a range among defendants with similar records who have been found guilty of similar conduct.

**WHEREFORE**, the defense prays that the Court will accept the Rule 11(c)(1)(C) agreement and sentence defendant to a 76-month term of imprisonment.

Respectfully submitted,

*/s/ Rossman D. Thompson, Jr.*
ROSSMAN D. THOMPSON, JR.
Assistant Federal Defender

## CERTIFICATE OF SERVICE

I, Rossman D. Thompson, Jr., Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have filed and served a copy of Defendant's Sentencing Memorandum, via electronically through Eastern District Clerk's Office Electronic Case Filing ("ECF") and by electronic mail upon:

Kevin L. Jayne
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106.

Kevin.Jayne@usdoj.gov

/s/ Rossman D. Thompson, Jr.
ROSSMAN D. THOMPSON, JR.
Assistant Federal Defender

DATE:  June 9, 2023